Earl JACKSON, Plaintiff,

v.

BOISE CASCADE CORPORATION,
Defendant.

Civil Action No. 95–0761–AH–S.

United States District Court,
S.D. Alabama,
Southern Division.

July 2, 1996.

Ronald A. Herrington, Jr., Mobile, AL, for plaintiff.

Sandy G. Robinson, Mobile, AL, for defendant.

### ORDER

HOWARD, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. [Doc. # 8]. Plaintiff filed a Response in Opposition to Defendant's Motion. [Doc. # 16]. Upon review and careful consideration of Defendant's Motion and the evidence in support of such Motion, Plaintiff's Response and the evidence in support of such Response, the Briefs of the parties and the pleadings in this action, the Court finds that Defendant's Motion for Summary Judgment is due to be **GRANTED.** The Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Earl Jackson, worked in the wood yard at Defendant Boise Cascade Corporation's Jackson, Alabama wood yard. Plaintiff's Complaint alleges that he was dis-charged by Boise Cascade because of his disabilities (sleep apnea and narcolepsy). Plaintiff brings this action pursuant to the Americans with Disabilities Act ("ADA").

2. Jackson began working for Boise Cascade on July 21, 1976. (Depo. of Plaintiff at 39.) At all times pertinent to Jackson's Complaint, Jackson worked in the wood yard. (Depo. of Plaintiff at 45–46.) As a part of his job in the wood yard, Jackson performed various functions. His primary duty was to help unload log trucks in the wood yard. (Plaintiff's Depo. at 58.) Jackson also did cleanup work in the wood yard area, using a "Bobcat" front-end loader. (Plaintiff's Depo. at 59, 119, 136–37, 140.) Additionally, Jackson worked in the reclaimer and drove chip trucks. (Plaintiff's Depo. at 92–98.)

3. In 1991, Jackson first noticed that he became sleepy during the day. (Plaintiff's Depo. at 90, 104.) He began to fall asleep at work. (Plaintiff's Depo. at 91.) Jackson stated that he would get sleepy even when he was standing up or working. (Plaintiff's Dep. at 104). On frequent occasions, Jackson admitted that he would sleep in the break room, reclaimer, and chip dump at times when he should have been working. (*Id.*)

4. In 1992, Jackson was caught sleeping in the chip dump. (Plaintiff's Depo. at 113–14.) Coleman Chastain, a supervisor, "chewed out" Jackson for such incident. (*Id.*) At the time that he was caught by Chastain, Jackson admits that he was falling asleep on the job every day, wherever he happened to be when he became sleepy. (Plaintiff's Depo. at 115–17.) Sometime after being caught by Chastain, Bill Lewis, the safety supervisor of the wood yard, saw Jackson asleep on the Bobcat front-end loader while the loader was still in gear. (Plaintiff's Depo. 118–19.)

5. In early 1993, Joe Baggett, another Boise Cascade employee, found Jackson asleep on the job. (Plaintiff's Depo. at 117, 125.) Baggett reported the incident to the mill's human resources department. Jackson attended a meeting along with union representatives. At such meeting, the human resources department determined that Jackson

should be "laid off" until such time as he could get his sleeping problem resolved. (Plaintiff's Depo. at 126–30.) Jackson remained "laid off" for over three months, returning for work on April 30, 1993. (Plaintiff's Depo. at 132.)

6. On September 22, 1993, Jackson was using the Bobcat front-end loader to clean up. (Jackson's Depo. at 140.) Jackson developed a headache from the heat, so he pulled the Bobcat in the shade to relieve his headache. (Plaintiff's Depo. at 137–42.) Ken Stuart and William Walker, two supervisors, noticed Plaintiff on the Bobcat front-end loader and determined that he was asleep. (Plaintiff's Depo. at 138–42.) Jackson states that Walker shook him and that Stuart had noticed him asleep before Walker shook Jackson. (Plaintiff's Depo. at 138.) Jackson does not admit that he was asleep, but he concedes that his eyes were closed and that he did not notice either Stuart or Walker until Walker shook Jackson. (Plaintiff's Depo. at 138–42.)

7. On September 23, 1993, Jackson attended a meeting that was also attended by union representatives on his behalf. (Plaintiff's Depo. at 143.) Bill Hearn of the Human Resources Department informed Jackson that the purpose of the meeting was to discuss Jackson's sleeping and asked Jackson what made him go to sleep. (Plaintiff's Depo. at 144.) Jackson replied that he thought that his heat-induced headache had caused him to go to sleep. (Plaintiff's Depo. at 168, 144–146.) Jackson did not mention his sleep apnea or narcolepsy. (Plaintiff's Depo. at 168.) On September 24, 1993, Boise Cascade terminated Jackson's employment.

8. The reason given for Jackson's termination was "unacceptable job behavior/performance, namely repetitive sleeping on the job." (See Plaintiff's Charge of Discrimination attached to his Complaint.) Jackson alleges that Mr. Stuart stated in a letter to Jackson, that Jackson "continued to be a direct safety threat to [him]self and other employees, despite repeated efforts to help [him] through multiple sleep studies, EAP counseling, and disciplinary supervision." (Id.)

9. Jackson claims to have incurable narcolepsy and sleep apnea. (Plaintiff's Depo. at 151.) Jackson states that he falls asleep "wherever the problem hits [him]" and admits that he often falls asleep at least twice a day during his day shift work hours at Boise Cascade. (Plaintiff's Depo. at 151–52, 158–59.) Jackson usually falls asleep at about 10:00 a.m. and usually sleeps for about an hour. (Plaintiff's Depo. at 172–73.) Jackson again falls asleep in the afternoon, usually about 2:00 p.m., and often sleeps for as much as two hours each afternoon. (Id.) However, Jackson testified that he falls asleep whenever he gets sleepy and he is as likely to fall asleep if he is standing or sitting and no matter whether he is hot or cold. (Plaintiff's Depo. at 159.)

10. Jackson testified that his problem is incurable and will never be corrected. (Plaintiff's Depo. at 131, 151.) Jackson has not applied for a job since September of 1993, because of his medical condition. (Plaintiff's Depo. at 89–90.) However, Jackson claims that he can perform the essential functions of his job with Boise Cascade as it was structured before he was discharged. (Plaintiff's Depo. at 155.) Jackson further admits that he never asked Boise Cascade to change his job in any way to accommodate his alleged medical problems. (Plaintiff's Depo. at 156–57.)

## CONCLUSIONS OF LAW

### I. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993,

996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)); *accord Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir.1992), *cert. denied* 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2511. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant, here the Defendant, satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).[1] "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party". *Walker v.*

*Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton,* 965 F.2d at 998 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). " 'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " *Tipton,* 965 F.2d at 999 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513) (citing *Adickes,* 398 U.S. at 158–159, 90 S.Ct. at 1608–09)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quotation marks and citation omitted).

## II. PLAINTIFF'S CLAIM

Plaintiff's only claim arises under Title I of the Americans with Disabilities Act, which prohibits discrimination on the basis of a disability in the employment arena. 42 U.S.C. § 12112. To establish an actionable violation of the ADA, a plaintiff must prove (1) that he has a disability; (2) that he is qualified for the job he held; and (3) that he was discriminated against because of his disability. *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209 (4th Cir.1994). For purposes of Defendant's Motion for Summary Judgment, Defendant does not contest that Plaintiff's sleep apnea and narcolepsy are disabilities for the purposes of the ADA. However, Defendant contends that Plaintiff has failed to present evidence that would establish a genuine issue of fact on the issues of whether Plaintiff is qualified to perform his former job with Defendant and even if he is determined to be qualified, Plaintiff has failed to show that he was terminated because of his disabilities. This Court finds that summary judgment is due to be granted on the ground that Plaintiff has failed to present evidence on the second prong of his *prima facie* ADA claim, *i.e.* Plaintiff has failed to present evidence from which a reasonable jury could

---

1. The shifting burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the burden of

proof at trial. *Id.* at 607 (citing *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608).

find him to be a "a qualified individual with a disability."

### A. Qualified Individual with a Disability

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To be "qualified," a person must be "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).[2]

█ The determination of whether a person is qualified is determined under one of two separate test: (1) whether the person is qualified without accommodation or (2) whether the person is qualified with a reasonable accommodation. In the action before this Court, Plaintiff's Complaint and his testimony in deposition indicate that he argues that he can perform his former job without any accommodation. However, Plaintiff's Response to Defendant's Motion for Summary Judgment argues that he can perform his job with reasonable accommodation. Therefore, the Court will analyze the second prong of Plaintiff's claim under both tests.

### 1. Without reasonable accommodation.

█ Plaintiff testified in his deposition that he could perform his job without accommodation. Plaintiff testified as follows:

Q. I mean, you understood that if you were having trouble staying awake at work, you were obviously having trouble doing your job that you were supposed to be doing, correct?

A. Well, that may be, but then I did my job. What I'm saying, my job never went undone. Because, you know, whatever—You know, I still unloaded trucks,

you know, it didn't keep me from unloading trucks. It didn't keep me from keeping my work area clean, you know, because I done this, that's my job, it's what I did for eight hours. And, you know, but if it had caused me to say the trucks were backed up, you see, because I couldn't get them unloaded, I was asleep, no, that never happened.

Q. Are you saying that you could still do all the jobs you were supposed to do, even though you were sleeping at work every day?

A. Well, I wasn't sleeping when I was doing the job.

(Plaintiff's Depo. at 129–30.) In the above testimony Plaintiff asserts that he could perform his job without accommodation. He states that he was able to complete the tasks assigned to him over the course of an eight-hour workday even though he suffered from his sleep disorders while working. However, Defendant's asserted reason for terminating Plaintiff was because he could not complete the essential tasks of his job as it was structured. Specifically, Plaintiff's job with Defendant required alertness and awareness to be completed in a safe manner.

The only evidence to support Plaintiff's claim is his deposition testimony. Plaintiff's testimony fails to create a genuine issue of fact with regard to whether he is qualified to perform the essential functions of his job without accommodation. Plaintiff testified that he falls asleep in the heat or the cold, standing or sitting, at all times of the day, and for various amount of times. Plaintiff also testified that he worked in a wood yard with heavy equipment; that he drove some of the equipment including a small front-end loader and small chip trucks; and that other people worked around him. Plaintiff was caught sleeping on the front end loader while it was in gear and another time he was caught on the loader with his eyes closed, "resting." In addition, Plaintiff admitted that he often slept on the job and was not caught by his supervisors.

**2.** The *Southeastern* case involved the Rehabilitation Act of 1973. Cases construing the Rehabilitation Act are authoritative in interpreting the

ADA. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 n. 14 (5th Cir.1995).

In Plaintiff's Brief, he argues that "there has been no evidence that he could not do his job. There has been no evidence of unsatisfactory performance." (Plaintiff's Brief at 11.) Plaintiff argues that he worked for the Defendant for seventeen years. However, the only relevant period of time to this action are the last two or three years of his employment. Plaintiff states that he was first treated for his sleep disorder(s) in 1991 and that he went for such treatment after "my sleep habits, you know, were altered, you know, they—It wasn't like I was before." (Plaintiff's Depo. at 90.) Plaintiff was fired on September 24, 1993. (Plaintiff's Complaint.) Therefore, the only years relevant to this action are the last two or three years of his employment with Defendant. Plaintiff's testified to many problems with his work. He had been caught sleeping, Defendant "laid off" Plaintiff for a period of time to allow Plaintiff to address his sleep disorders. Plaintiff returned and continued to fall asleep on his job. Therefore, Plaintiff's argument that he could perform the essential functions of his job is contradicted by Plaintiff's own testimony. The fact that Plaintiff had not caused an accident does not indicate that Plaintiff could perform his job. An employer is not required to wait until an employee injures someone or damages equipment to terminate an employee who exhibits work attributes that could cause an accident. A common sense element to any job is the ability to complete a task in a safe manner. A constant state of alertness is a common sense essential element to Plaintiff's job with Defendant. The Court FINDS that Plaintiff has failed to present evidence from which a reasonable jury could find that Plaintiff is qualified to perform the essential functions of his job without reasonable accommodation. Therefore, Defendant's Motion for Summary Judgment is due to be GRANTED on this ground alone as Plaintiff has failed to show that he is a qualified individual with a disability under the ADA. However, in the abundance of caution, the Court will consider whether Plaintiff could perform his job with reasonable accommodation, as newly alleged in Plaintiff's Brief.

## 2. Reasonable Accommodation

Even though a plaintiff cannot perform the essential functions of his job because of his disability, he can still show that he is a qualified individual by showing that he would be able to perform the essential functions of his job if his employer would make a "reasonable accommodation." As stated above, in the action before this Court, Plaintiff's own deposition testimony indicates that he believes he can perform the essential functions of his job without any accommodation. However, in Plaintiff's Brief in Opposition, he needs reasonable accommodation to perform his job.

Plaintiff states in his Brief that Defendant could have accommodated him by allowing him to take a nap in the morning and in the afternoon when Plaintiff "usually" becomes sleepy. (Plaintiff's Brief at 6.) The Court finds that Plaintiff's reasonable accommodation argument fails on two grounds. The first ground supporting the Court's finding is that Plaintiff's testimony shows that he never asked for the "two-nap-a-day" accommodation mentioned in his Response Brief. "While the employer is required to make a reasonable accommodation, 'it is the responsibility of the individual with the disability to inform the employer an accommodation is needed.'" *Mears v. Gulfstream Aerospace Corp.*, 905 F.Supp. 1075, 1080 (S.D.Ga.1995) (quoting *Interpretive Guidance on Title I of the American with Disabilities Act*, 29 C.F.R. § 1630, Appendix at 407), *aff'd*, 87 F.3d 1331, (11th Cir. June 3, 1996).

Plaintiff states that some accommodation was given to Plaintiff. In January of 1993, Defendant "laid off" Plaintiff to allow him to see a doctor to address his sleep disorders. Defendant made company doctors available to Plaintiff and Plaintiff states that he did see a company doctor. (Plaintiff's Depo. at 128–30.) Plaintiff states that he did not ask for any other accommodations because "I didn't even know he was supposed to make accommodations...." (Plaintiff's Depo. at 130.) Plaintiff states that in January of 1993 he saw a doctor at a clinic in Jackson, Alabama, and that he returned to work on April 30, 1993. (Plaintiff's Depo. at 132.) Plaintiff was "laid off" in order to remedy his sleep

disorder. He returned to work asserting that he was "fit for work." He did not ask Defendant for further accommodation. He never suggested that Defendant allow him two naps a day. Such accommodation is raised for the first time in Plaintiff's Brief in Opposition.

Plaintiff makes conclusory allegations in his Brief with regard to his reasonable accommodation that are either unsupported by the evidence or contradicted by Plaintiff's own testimony. Plaintiff argues that Defendant "should have known" what accommodation was required. Plaintiff states that "Plaintiff and Defendant both knew what type of accommodation was necessary." (Plaintiff's Brief at 12.) However, Plaintiff has failed to provide any case law to support his assertion that the ADA obligates a Defendant to contemplate any reasonable accommodation for a disability, even when an employee does not ask for an accommodation and is not obviously disabled. Under the facts as presented by Plaintiff, Plaintiff went to a doctor for treatment and returned to work three months later. Plaintiff stated that he was ready for work and did not state that he needed any accommodation other than the time off he had just completed. Plaintiff admits in his Brief that "the ADA does not require clairvoyance." *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 932 (7th Cir.1995). However, this is exactly what Plaintiff demands. Plaintiff's only evidence shows that he began having sleeping problems in 1991, that he sought treatment, but continued to work. After Defendant's agents caught Plaintiff sleeping on the job several times, Defendant "laid off" Plaintiff for an indefinite period of time to address his disability. Plaintiff accepted such "lay off," sought treatment with a doctor in Jackson, Alabama, and returned to work three months later. Plaintiff did not inform Defendant of the status of his disability and did not request any accommodation. However, Plaintiff now argues that Defendant "should have known" that Plaintiff needed two naps a day in order to perform the essential functions of his job. Plaintiff's assertions are not supported by the law.

[T]he ADA plaintiff must ... show that the employer had knowledge of the limitation and the need to accommodate it before it failed to make a reasonable accommodation. That, by definition, puts the burden on the non-obviously disabled plaintiff to timely alert the employer to his claimed disability and thus afford the employer an opportunity to make a reasonable accommodation.... It follows that the ADA claimant, who is in the best position to know what accommodation is needed, must request a reasonable accommodation at the time the disability in question presents a problem on the job.

*Fussell v. Georgia Ports Authority,* 906 F.Supp. 1561, 1569 (S.D.Ga.1995) (citations omitted). Plaintiff has presented no admissible medical evidence or testimony to support his assertion that two naps a day will reasonably accommodate his sleeping disorders. The only medical evidence presented, which this Court has stricken as improper evidence, makes no mention of any suggestion of napping to accommodate Plaintiff's disorders. "It is simply too late to raise suggested accommodations two years later in a summary-judgment response brief. The essence of the ADA claim is discrimination in the work place, which means while the employee is *on* the job. Hence, the employee must show that he requested a reasonable accommodation while on the job ... but the employer simply refused to make that accommodation, thereby discriminating against the employee at the time." *Fussell,* 906 F.Supp. at 1570. The Court finds that Plaintiff's late requested accommodation is too late.

As a second ground for the Court's finding that Plaintiff has failed to show that he is a qualified employee if given a reasonable accommodation, is that Plaintiff has failed to present evidence from which a reasonable jury could find that Plaintiff's proposed "two nap-a-day" accommodation would enable Plaintiff to complete the essential functions of his job. Even if Plaintiff had provided evidence that he requested the "two nap-a-day" accommodation or that such accommodation was "readily apparent" to Defendant, Plaintiff's argument that his disability could be accommodated by allowing Plaintiff two naps depends upon his assertion that his falling asleep is predictable and reg-

ular. The Court finds that Plaintiff has failed to provide evidence support such assertions. Plaintiff has provided no medical testimony explaining the nature of his disability or the regularity and predictability of his drowsiness. At a minimum, it is incumbent upon a Plaintiff to present some medical evidence to support his suggested accommodation. However, in this action, the Court has only Plaintiff's bare assertion made in his Brief. In fact, Plaintiff's own testimony contradicts his argument that his sleep disorder is predictable and regular. Plaintiff testified that he fell asleep on the job everyday, wherever he happened to be working. (Plaintiff's Depo. at 116–17.) Plaintiff testified that he falls asleep "[w]henever the problem hits me." (Plaintiff's Depo. at 151–52.) He testified that he has slept for anywhere from five minutes to two hours. Plaintiff testified that he falls asleep "at least twice a day ... [and] ... [s]ometimes it can by [more than twice a day]." (Plaintiff's Depo. at 159.) (emphasis added). Plaintiff testified that he falls asleep regardless of temperature or other conditions. (*Id.*) Therefore, Plaintiff's own testimony establishes that his sleep disorder is not regular or predictable. Even if Plaintiff could work efficiently while taking two naps during the day (Plaintiff admits that such naps would take at least three hours of his eight hour workday), Plaintiff's testimony shows that he may fall asleep more than twice a day and he may fall asleep at different times during the day. Additionally, the fact that Plaintiff falls asleep in the hot or the cold, whether standing or sitting, and even in mid-sentence, shows that Plaintiff's sleep disorder is unpredictable. Even if Plaintiff were allowed to take a nap whenever the need arose (which would necessarily exceed twice a day), Plaintiff's own testimony establishes that he often falls asleep before stopping the activity in which he is involved. Therefore, as happened at least once, Plaintiff could fall asleep while operating dangerous equipment, thus endangering his own life and the lives of his co-workers. If Plaintiff fell asleep on the job, such disorder could be disastrous. Perhaps, there are certain office jobs where falling asleep at inopportune times would only result in inefficiency, however, if Plaintiff fell asleep on his job with Defendant, Plaintiff could seriously injure or kill himself or a co-worker, as well as cause tremendous damage to the equipment. Therefore, the Court finds that Plaintiff has failed to present evidence from which a jury could find that Plaintiff's suggested accommodation of two naps a day is a reasonable accommodation that would allow Plaintiff to perform the essential functions of his job. Such accommodation is unsupported by medical testimony and Plaintiff's testimony shows that even with two-naps-a-day he might fall asleep on the job.

Therefore, the Court holds that Defendant's Motion for Summary Judgment is due to be and hereby is **GRANTED** as to Plaintiff's Complaint. Plaintiff failed to provide "substantial evidence" that he is a "qualified individual with a disability." 42 U.S.C. § 12111(8). Such showing is the second step in an ADA plaintiff's *prima facie* case. Therefore, Plaintiff's ADA claim fails. Defendant is entitled to **FINAL JUDGMENT** on Plaintiff's Complaint and Plaintiff **SHALL HAVE AND RECOVER NOTHING** from Defendant. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. No costs taxed.