**Leonard E. HEWITT, Plaintiff,**

v.

**ALCAN ALUMINUM CORPORATION, Defendant.**

**No. 99–CV–1486.**

United States District Court, N.D. New York.

Nov. 8, 2001.

Order Denying Reconsideration Jan. 11, 2002.

---

Sullivan & Metcalf, Oswego, NY (John T. Sullivan, Jr., of counsel), for Plaintiff.

John C. Tillman, Alcan Aluminium Corporation, Cleveland, OH, for Defendant.

MUNSON, Senior District Judge.

## Background

Defendant Alcan Aluminum Corporation ("Alcan") runs a prodigious aluminum rolling plant in Oswego, New York, having about 740 employees. The plant complex is situated upon 500 acre parcel of land with 1.4 million feet undercover. The installation has assorted manufacturing units, including recycling of used aluminum beverage containers, the casting of molten aluminum into ingots, and two big rolling mills that manufacture a range of aluminum sheet products. The plaintiff was employed full-time there from July 1981, until his employment was concluded on June 19, 1998.

Plaintiff was hired to fill an "entry level" position and after a week of becoming familiar with the plant's general operations, he submitted "bids" for several job openings. He was selected, trained and certified by Alcan as a fork lift operator. This position required him to drive a fork lift truck and other industrial conveyances to move, pick up and deliver assorted products, equipment and materials to diverse locations throughout the plant area. Subsequently, Alcan processed and recertified plaintiff for this position in 1985, 1989 and 1996.

The size of the Alcan operation requires an appreciable quantity of employee activity and vehicle and personnel movement within the plant limits, making the safe operation of all mobile equipment essential to the secure and effective running of the facility. In Alcan's Employee Handbook of Policies and Practices, the Alcan Mission and Safety Policy stresses the importance of employees guaranteeing a safe and healthy workplace. The Handbook specifically provides that disregarding safety rules and practices, negligently causing injury or possible injury to other employees, and damaging company property, will result in disciplinary action up to and including dismissal. (Def.Ex. C).

Starting in January 1995, until his discharge in June 1998, plaintiff was involved in a series of accidents resulting from the unsafe and reckless operation of fork lift trucks or other equipment used in the course of his employment causing property damage and/or near miss accidents. He also displayed disruptive and inappropriate conduct while attending a team safety meeting on October 3, 1995. In addition to corrective action instructions after several of his accidents, plaintiff also received written warnings that future occurrences of property damage could result in additional discipline up to and including termination. (Def.Ex.A)

Plaintiff's last fork lift accident at the Alcan plant occurred on June 17, 1998. The fork lift plaintiff was operating knocked over a high stack of heavy aluminum ingots known as sow blocks that weigh 1,000 to 2,500 lbs. each. There was

no personal injury, but the falling sow blocks crushed a three foot by seven foot hole through the building side causing extensive damage to the inside and outside of the building. When plaintiff continued to operate his forklift in an unsafe manner, he was ordered off the machine forthwith, sent home, later suspended, and, after the accident was investigated, was terminated on June 19, 1998, for unsafe and reckless performance that presented a serious and direct threat to himself and other employees.

In January 1999, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of the Americans with Disabilities Act. Plaintiff claimed that he had a mental impairment—post traumatic stress disorder ("PTSD") and depression—that when not treated with medication, substantially limits his major life activity of working; that Alcan was aware of his condition and discharged him because of his disability; that his alleged unsafe behavior took place because his medication was not always effective; that he could safely perform other work at the plant, but Alcan was unable or unwilling to make reasonable accommodations for him. The EEOC concluded its inquiry by finding that there was no evidence that plaintiff was discharged based on his disability, and that Alcan's discharge of plaintiff based on his unsafe and reckless work performance was a legitimate, non discriminatory reason for its action.

The EEOC issued plaintiff a Notice of Right–to–Sue letter dated June 14, 1999. This action was commenced with a filing of a summons and complaint on September 16, 1999, seeking monetary damages, injunctive relief and counsel fees. Currently before the court is defendant's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered op-

position to this motion defendant has also moved in its reply brief to strike Plaintiff's Exhibit A from the record in this case claiming that the medical records contained therein are not properly authenticated. Defendant's latter motion will be denied because the non-moving party is in a favorable position, being entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979).

## Discussion

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed too "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1991) (quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issue of fact must be supported by evi-

dence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude any entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

Summary judgment is appropriate in discrimination cases, for, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (1994). The Supreme Court has also recently reiterated that trial courts should not " 'treat discrimination differently from other ultimate questions of fact.' " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ Determination of employment discrimination claims made pursuant to administrative proceedings or contractual grievance processes are not given any preclusive effect under doctrines like *res judicata*, in future suits to redress grievances under Title VII. *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1392 (11th Cir.1982). The remedies in an administrative action or under a grievance procedure are different than those available under Title VII or 42

U.S.C. § 1983. *Id.*, at 1392, and, in any event, the federal courts are intended as the final arbiter of rights under Title VII, not administrative agencies or tribunals. *Hutchings v. United States Industries, Inc.*, 428 F.2d 303, 313–314 (5th Cir.1970).

■ The ADA prohibits discrimination by covered entities against qualified individuals with a disability. 42 U.S.C. § 12112(a). Only extremely limiting disabilities in either the short or long term qualify for protected status under the ADA The portion of the ADA applicable to the instant case states in pertinent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the discharge of employees ..." 42 U.S.C. § 12112(a). In order to create a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must initially show (1) that his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he is "otherwise qualified" to perform the job, and (4) that he was fired because of his disability. *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 149–150 (2d Cir.1998). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." *Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir.1996).

■ An employer is subject to the ADA if it is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. § 12119(a) and (5)(A). The breadth of defendant Alcan's business operations clearly make it an employer subject to the ADA.

When considering a summary judgment motion in a discriminatory discharge brought under the ADA, the court applies the burden shifting test found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973). The test is composed of three parts—1) plaintiff must demonstrate a *prima facie* case of discrimination; 2) if the *prima facie* case is established, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions, and 3) if the defendant does so, the presumption created by plaintiff's *prima facie* case is removed, and the plaintiff then must prove the presence of intentional discrimination by showing by a preponderance of the evidence that the defendant's proffered reasons are only a pretext for the real motive of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2748–2749, 125 L.Ed.2d 407 (1993).

A disability within the meaning of the ADA is defined as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A). There is little doubt that PTSD can constitute an impairment. *Tedeschi v. Sysco Foods of Philadelphia*, 2000 WL 1281266 at *3 (E.D.Pa. Sept. 1, 2000) The most prominent symptoms of PTSD are overreacting to stressful situations, difficulty sleeping, high blood pressure, apprehension, depression and paranoia. *Id.* at *1. While the record contains no specific medically substantiated diagnosis of plaintiff's asserted PTSD, the court will assume that it is evidenced by his periods of depression. The question, then, is whether that impairment constitutes a disability under one of the statutory definitions listed above. *Schaefer v. State In-*

*surance Fund*, 207 F.3d 139, 142 (2d Cir. 2000).

To ascertain that a plaintiff is disabled for the purposes of ADA, three steps are taken, (1) decide if the plaintiff is afflicted with a physical or mental impairment, (2) name the life activity upon which plaintiff relies and confirm whether it is a major life activity under the ADA and, (3) determine if plaintiff's impairment substantially limits the major life activity relied upon by plaintiff. *Bragdon v. Abbott*, 524 U.S. 624, 632–639, 118 S.Ct. 2196, 2202–2206, 141 L.Ed.2d 450 (1998). Major life activities are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. 1630.2(i).

Plaintiff alleges that his PTSD constitutes a mental impairment that substantially limit the major life activity of working, and when not treated with medication, his mental impairment prevents him from working. (Def.Ex. 1 p. 2). Plaintiff reiterates this position in his deposition testimony. (Plf.Dep. p. 47–75). Defendant argues that plaintiff is not "an individual with a disability" under the ADA, and that even if he were, he was discharged not because he was disabled, but because his repeated unsafe conduct, made his continued employment at Alcan contrary to the best interest of himself and his fellow employees.

A disability exists only where an impairment substantially limits a major life activity not where it might, could or would be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits a major life activity. A person whose physical or mental impairment is corrected by mitigating measures

still has an impairment, but if that impairment is corrected, it does not substantially limit a major life activity. *Sutton v. United Air Lines,* 527 U.S. 471, 480–82, 119 S.Ct. 2139, 2146–47, 144 L.Ed.2d 450 (1999). However, the use of medication or a corrective medication or device does not, standing alone, relieve one's disability. Rather, one has a disability under the statute if, notwithstanding the use of medication of a corrective device, that individual is substantially limited in a major life activity. 527 U.S. at 487, 119 S.Ct. at 2149.

Paragraph 18 of plaintiff's complaint states that his "mental impairment condition, if left untreated, prevents plaintiff from working." In answer to defendant's interrogatories, plaintiff responded that his PTSD "substantially limited one or more of such person's major life activities, that when not treated with medication, said condition prevents the plaintiff from working." (Def.'s Ex. 1, Ans. 2). In a new charge questionnaire signed by plaintiff on November 5, 1998, and submitted to the EEOC, plaintiff stated that his asserted disability "does not affect ability to perform (his work) when controlled by medication." (Plf.Dep. p. 75).

Plaintiff further admits that he was not under any work restrictions or limitations at the time of the June 17, 1998 fork lift accident (Plf.Dep. p. 87). Moreover, he also acknowledges that he did not take any medication or receive any treatment for his asserted disability for at least a year prior to the June 17, 1998 accident date. (Plf.Dep. p. 96). Plaintiff does not claim that his failure to take his medication or receive treatment was a causative factor in the series of accidents he had during his last year of employment, however, it is conceivable that it could have been. If this was so, since plaintiff admits that his PTSD is correctable by medication which

he voluntarily chose not to take, his PTSD did not substantially limit him in any major life activity. A plaintiff who does not avail himself of corrective medication is not a qualified individual under the ADA. *Tangires v. The Johns Hopkins Hospital,* 79 F.Supp.2d 587, 596 (D.Md.2000), affd. 230 F.3d 1354 (4th Cir.2000).

The disclosures made by plaintiff are admissions that his medication successfully countered any debilitating effects of his asserted PTSD such that it did not substantially interfere with the specific major life activity of working. And, except for one brief period in 1991 or 1992 when he had adverse side effects from the medication which required its adjustment, (Plf.Dep. p. 86), plaintiff points to no other hostile side effects from the medication he has taken. This isolated incident is insufficient to substantially limit the major life activity of working. *Vande v. State of Wisconsin Department of Administration,* 44 F.3d 538, 543 (7th Cir.1995).

Plaintiff is not disabled, therefore, the court need not address plaintiff's argument that he is a qualified disabled person. Under the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the position ..." 42 U.S.C § 1211(8). Plaintiff's contentions that he is a qualified individual, and that defendant did not make reasonable accommodations for him are irrelevant because, as discussed *supra,* plaintiff is not disabled within the meaning of the statute.

■ Plaintiff was not discharged because of any disability. His dismissal was warranted because his work place conduct posed a threat to himself and his fellow employees. As set forth above, between January 1995, and June 1998, plaintiff was involved in over a dozen incidents involving property damage and/or near miss acci-

dents resulting from his unsafe operation of fork lift trucks and other mobile equipment used in his work. In his last serious incident at the Alcan plant, plaintiff operated his forklift truck in a dangerous manner and knocked over a tall stack of large aluminum blocks causing the blocks to crush a 3' × 7' hole through the sidewall of a plant building. Whether plaintiff's actions may have been triggered by mental illness does not present an issue under the Americans with Disability Act. *Palmer v. Circuit Court of Cook County,* 117 F.3d 351, 352 (7th Cir.1997), *cert. denied,* 522 U.S. 1096, 118 S.Ct. 893, 139 L.Ed.2d 879 (1998). A common sense element to any job is the ability to complete a task in a safe manner. A constant state of alertness is a common sense essential element to plaintiff's job with defendant. *Jackson v. Boise Cascade,* 941 F.Supp. 1122, 1126 (S.D.Ala.1996).

Plaintiff's accident record amply demonstrates that he was a threat to himself and his fellow employees while performing his job as a mobile equipment operator. An employer is not required to wait until an employee badly injures someone or extensively damages equipment or structures to terminate an employee who exhibits work attributes that could cause an accident. *Jackson v. Boise Cascade Corporation,* 941 F.Supp. 1122, 1126 (S.D.Ala.1996). Plaintiff had been given several opportunities to correct his improper conduct, he had been re-instructed, counseled, disciplined and warned that future similar conduct could result in termination. Plaintiff's failure to take advantage of the defendant's attempts to assist him in solving his workplace problems ended with his termination.

■ Although not pleaded in his complaint, plaintiff's motion opposition papers seem to indicated that defendant violated plaintiff's due process rights by terminating him without suspending him for three days prior to his discharge as required by the four step process set out in its Disciplinary Procedure publication. Plaintiff's contentions are without merit.

Step four of the Disciplinary Procedure publication does provide that before termination is effected, "the employee shall be suspended for a period of (3) full working days (72 hours) without pay; at the end of which period employment may be terminated." but the publication further states at V. General Stipulation A, that "[I]n case several incidents happen at unusually close intervals, even though not necessarily identical in nature, one or more steps can be combined or passed over." (Pltf.'s Mem. Of Law Ex. D) At General Stipulation 2., The employer also reserved the right to terminate employees guilty of flagrant violations of good behavior without following the four step procedure. *Id.* It is apparent that the four incidents plaintiff was involved in between April 1, 1998 and June 1st, 1998, were at sufficiently close intervals to pass over the four steps of the Disciplinary Procedure.

Even if defendant's Disciplinary procedure was not followed, plaintiff's termination would not have violated any of his due process rights. New York law unequivocally dictates that, absent an express agreement establishing that employment is to be for a fixed duration, an employment relationship is presumed to be for a hiring at will "... Which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 300–01, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983). *Wright v. Cayan,* 817 F.2d 999, 1004–05 (2d Cir. 1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). Plaintiff has produced no expressed agreement that his employment was for a fixed period, nor has he identified any specific language in

defendant's Disciplinary Procedure publication showing the existence of a contractual right limiting plaintiff's recognized right to discharge him anytime at will or, as here, for cause. *Gmora v. State Farm Mutual Automobile Insurance Company*, 709 F.Supp. 337, 341 (E.D.N.Y.1989); aff'd, 888 F.2d 1376 (2d Cir.1989).

■ The court will not consider the causes of action that plaintiff's complaint alleges as violations of the Vietnam Veterans Readjustment Assistance Act, as amended, 38 U.S.C. § 4212, ("VEVERA") because no private right of action exists under this statute. Only the Department of Labor may sue under this act. *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20 (1st Cir.1988); *Phillips v. Merchants Insurance Group*, 990 F.Supp. 99 (N.D.N.Y. 1998); *Aleszczyk v. Xerox Corp.*, 1990 WL 251849, at *7, (W.D.N.Y.1990) reversed on other grounds, 918 F.2d 1052 (2d Cir.1990). "[t]o allow a private right of action might well frustrate the orderly enforcement process set up by the regulations, which detail a specific sequence of proceedings to be followed by the Department of Labor in handling veteran's complaints.". *Barron*, Furthermore, those courts that have hedged on the question of the existence of a private right of action have held that complainants must first file a complaint with the Department of Labor ... before bringing suit. 41 C.F.R. 60–225.26(a) provides that "[a]ny applicant for employment ... or an employee ... may ... File a written complaint with the veterans' Employment Service of the Department of Labor ... alleging a violation of the Act or regulations.... Such complaint is to be filed not later than 180 days from the date of the alleged violation." *Philippeaux v. North Central Bronx Hospital*, 871 F.Supp. 640, 648 (S.D.N.Y.1994), aff'd, 104 F.3d 353 (2d Cir.1996), *cert. denied*, 520 U.S. 1105, 117 S.Ct. 1110, 137 L.Ed.2d 312 (1997).

Courts that have considered the wording of this regulation have held that exhaustion of administrative remedies to be a mandatory prerequisite to instituting a lawsuit. *De Leon Cruz v. Loubriel*, 539 F.Supp. 250, 251 (D.P.R.1982); *Marin v. New York State Department of Labor*, 512 F.Supp. 353 (S.D.N.Y.1981). The record, here, does not show that plaintiff has ever filed such a complaint.

For the foregoing reasons, the court finds that plaintiff has failed to present sufficient evidence upon which to establish a *prima facie* case of disability discrimination.

■ The court declines to exercise pendant jurisdiction over plaintiff's state law claims under the New York Human Rights Law. When the federal law claims have been dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of pendant jurisdiction by dismissing the case without prejudice. This judgment will not foreclose plaintiff's pursuit of his state law claim in state court. *Buckley v. Consolidated Edison Company of New York*, 155 F.3d 150, 157 (2d Cir.1998).

Accordingly, defendant's motion to strike Exhibit A of his opposition to motion papers is **DENIED,** and

Defendant's motion for summary judgment is **GRANTED** and the complaint is **DISMISSED** without prejudice.

**IT IS SO ORDERED**

### MEMORANDUM DECISION AND ORDER

On November 8, 2001, this court issued a Decision and Order rejecting plaintiff's federal claims under the Americans with Disabilities Act, 42 U.S.C. § 12117(ADA), granting summary judgment to defendant.,

and declining to exercise supplemental (pendent) jurisdiction over plaintiff's state law claims. The facts of this case are fully set forth in the court's prior opinion.

Defendant now brings a motion pursuant to Federal Rule of Civil Procedure 60(b)(6), requesting the court to reconsider that portion of the Decision and Order in which the court declined to exercise supplemental jurisdiction over plaintiff's state law claims made under the provisions of the New York Human Rights Law.

Defendant contends that its motion should be granted because the court is bound by the decision made in the Northern District of New York *Cernaro v. Alcan Aluminum Corp,* 95–CV–850, May 6, 1997, a case with a fact pattern quite similar to the instant one. In *Cernaro,* Judge Scullin initially declined to exercise supplemental jurisdiction over plaintiff's state law claims, but upon evaluating defendant's reconsideration motion, vacated that portion of his decision, and, based upon diversity jurisdiction, exercised supplemental jurisdiction and dismissed the state law claims. When a federal court dismisses federal claims it should also dismiss state law claims if the complaint predicated jurisdiction over those claims on diversity of citizenship as well as pendent jurisdiction, *Connecticut National Bank v. Fluor Corporation,* 808 F.2d 957, 963 (2d Cir.1987). Since federal jurisdiction is not based on diversity in the case at bar, the *Cernaro* result will not be pivotal in this court's assessment of defendant's current reconsideration motion.

Rule 60(b)(6) provides that a court may relieve a party from a final judgment, order or decree for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Courts use Rule 60(b)(6) relief sparingly "as an equitable remedy to prevent manifest injustice" and grant relief "only where extraor-dinary circumstances prevent a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir, Co.,* 984 F.2d 1047, 1049 (9th Cir.1993); *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Therefore, to obtain relief under Rule 60(b)(6), a moving party must show that he suffered an injury as a result of the judgment from which he seeks relief and that circumstances beyond his control prevented him from taking timely action to protect his interests. *Alpine Land & Reservoir,* 984 F.2d at 1049,

28 U.S.C. § 1367(a) states that in any civil action in which the district court has original jurisdiction, the district court shall also have supplemental jurisdiction over all claims that are so related to claims in the action within the original jurisdiction of the court, that they for part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it had original jurisdiction. The Second Circuit has found that "absent exceptional circumstances," where federal claims are terminated by summary judgment, courts should "abstain from exercising pendent jurisdiction." Drexel *Burnham Lambert v. Saxony Heights Realty* 777 F.Supp. 228, 240 (S.D.N.Y.1991) (quoting, *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986)). Factors to be considered by the court include (1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local concern. *Drexel Burnham Lambert, supra,* at 240. "In the usual case in which all federal law claims are eliminated before

trial, the balance of factors ... will point toward declining jurisdiction over the remaining state law claims." *Morse v. University of Vermont,* 973 F.2d 122, 127–128 (2d Cir.1992).

In the instant case, the pendent state claims developed from the same set of facts as did the original federal claim. Consequently, they were appropriately brought together by 28 U.S.C. § 1367(a). Nevertheless, when the federal claims were dismissed, the state claims left are open to dismissal as the court, in its discretion, can decline to exercise supplemental jurisdiction over these state claims, § 1367(c)(3). The complaint in this case was filed in September 1999, but no trial date has been forthcoming, and the remaining issues are founded on state discrimination law alone.

Therefore, the court declines to exercise supplemental jurisdiction over the state claims in this case. See *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) (when "all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims."); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664–65 (2d Cir.1988) ("the basis for retaining jurisdiction is weak when ... the federal claims are dismissed before trial."); *Buckley v. Consolidated Edison Company of New York,* 155 F.3d 150, 157 (2d Cir. 1998) (after dismissing federal claims, district court "properly declined to exercise supplemental jurisdiction over [plaintiff's] claim under the New York Human Rights Law.")

Accordingly, defendant's motion for reconsideration of the court's declination of supplemental jurisdiction in its Decision and Order of November 8, 2001 is **DENIED.**

**IT IS SO ORDERED**