**Stewart J. RODAL, Plaintiff,**

v.

**ANESTHESIA GROUP OF ONONDAGA, P.C., Defendant,**

**No. 00–CV–1386.**

United States District Court, N.D. New York.

March 18, 2003.

Stewart L. Weisman, Esq., Manlius, NY, for Plaintiff.

Thomas C. Kingsley, Esq., Syracuse, NY, for Plaintiff.

Scolaro, Shuman, Cohen, Lawler & Burstein, P.C. (Shari R. Cohen, Esq., of Counsel), Syracuse, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

Plaintiff is a board certified anesthesiologist and a shareholder in defendant Anesthesia Group of Central New York, P.C. ("the Group"). The Group a domestic professional corporation located in Syracuse, and it primarily provides anaesthesia and related services at the St. Joseph's Hospital Health Center, Syracuse, New York, ("the Hospital") and the North Medical Center, Liverpool, N.Y. ("the Medical Center"). In 1983 plaintiff became an attending physician with the Group in 1986, he became a board certified anesthesiologist

and was invited by the Group to become a shareholder. Plaintiff accepted the offer, and entered into an Employment Contract with the Group.

In 1994, plaintiff became ill with a disease that was subsequently diagnosed as a metastatic islet cell tumor, a rare form of a cancerous tumor of the cells that manufacture insulin.

In April 1995, plaintiff contacted the Group leader, Dr. Ascioti, to discuss a lighter work schedule due to his illness. As a result of this meeting, plaintiff began working at the North Medical Center outpatient facility with no night calls or weekend shifts. Additionally, he would continue to oversee the Group's billing office which was located there.

In July 1995, a meeting was held by the Group to consider if a blend of partial disability insurance benefits paid for by the Group, and direct compensation from the Group, would provide plaintiff with an income level that was reasonable based on his then current contribution to the Group. A proposal was formulated but was rejected by plaintiff because the combined insurance benefits and compensation paid by the Group would not approximate his full time income.

Thereafter, although the terms of plaintiff's Employment Agreement with the Group provided that it had no obligation to continue his compensation for more that 90 days (April–July), plaintiff received his full salary and benefits for a nine month period from April 1995, through January 1996. Other Group members covered all of plaintiff's night and weekend calls throughout this period, in addition to their own, with no additional compensation for their endeavors. The minutes of the Group corporate meeting of November 6, 1995, noted that plaintiff intended to again assume his call duties at the Hospital starting in January, 1996, and he did so.

Due to the concern that the accommodation given to plaintiff greatly exceeded the time period set forth in the Employment Contract, the Group decided to revise its Employment Contract to cover employee disability periods exceeding 90 days. A proposed revision was drafted which provided that, if the disabled employee could perform at least sixty percent (60%) of his former duties during a ninety day accommodation period, the employer would continue the employee's compensation in full for an additional period of 90 days. The revision provision was presented to the Group's members for discussion at the Group's Board Meeting of December 4, 1995, and was executed by members of the Group at their Board Meeting on January 8, 1996. Plaintiff was present at both meetings, and signed the revision execution document, two months after he had decided to return to call duties.

In January 1996, plaintiff returned to a full work schedule although the medications he was taking caused him discomfort. This discomfort compelled him to pay other doctors to cover his shifts on an irregular basis. Plaintiff continued on a full work schedule into 1999, but due to the effects of his medication, fatigue and personal problems, he requested Dr. Ascioti to consider decreasing his work schedule. Plaintiff claims that Dr. Ascoti never considered his request, and his appeals to individual members of the Group were unavailing. He therefore, advised Dr. Ascioti in June 1999, that he would be going on full disability in mid-July 1999. Plaintiff maintains that defendant should have accommodated his reduced work hours request because he could still perform the essential functions of his profession but not on a full time basis.

On June 21, 1999, plaintiff attended a meeting of the Group's Board of Directors.

During the meeting, a Group member proposed that plaintiff be given the position of manager of the billing office because he was qualified for the work since he had created the business office. Although the attendees apparently expressed approval of this proposal, it does not appear that a formal vote was taken on it. Plaintiff later learned that the proposal was tabled.

Sometime between June 21 and July 17, 1999, the position of business manager or consultant was created by the Group, and William Killroy was hired to fill it. Plaintiff alleges that this position was the same as the billing office manager's he had previously requested and was qualified for, but the Group did not advise him of the decision to create this position, or given a chance to apply for it. The Group does not agree that the new position was the same as that of the billing office manager.

On May 5, 2000, plaintiff filed a Charge of Discrimination by the Group with the Buffalo Office of the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, and the Americans with Disabilities Act of 1990 43 U.S.C. § 12101(ADA). The EEOC complaint alleged only one ADA violation, the denial of an available administrative position. In its Dismissal and Determination letter dated June 28, 2000, the EEOC stated that "the evidence fails to indicate that a violation of the law occurred and it is not likely that an additional investigation will result in our finding of a violation." The correspondence further stated that it had no jurisdiction over the claim because plaintiff was a shareholder and Vice President of the Board of Directors of the Group. The letter also contained a notice of right to institute a lawsuit on the charge within 90 days.

This action was commenced September 13, 2000. The complaint alleges violations of the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("the ADA"), jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(a)(4), supplemental jurisdiction is also invoked under 28 U.S.C. § 1367. Plaintiff asserts that defendant Group violated the ADA by declining to reasonably accommodate plaintiff by permitting him to work reduced hours as an anesthesiologist, and by not employing him in an administrative position due to his disability. The relief sought is compensatory and punitive damages. Currently before the court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to the motion.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1991)(quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on con-

clusory allegations or statements in affidavits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

Summary judgment is appropriate in discrimination cases for, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994). The Supreme Court has also recently reiterated that the trial courts should not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Determination of employment discrimination claims made pursuant to administrative proceedings or contractual grievance processes are not given any preclusive effect under doctrines like *res judicata* in future suits to redress grievances under Title VII. *Hewitt v. Alcan Aluminum Corporation*, 185 F.Supp.2d 183, 187 (N.D.N.Y.2001). The remedies in an administrative action or under a grievance procedure are different than those available under Title VII, and, in any event, the federal courts are intended as the final arbiter of rights under Title VII, not administrative agencies or tribunals. *Bembry v. Darrow*, 97 F.Supp.2d 281, 285 (N.D.N.Y.2000).

The portion of the ADA applicable to case at bar states that [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the discharge of employees ..., 42 U.S.C. § 12112(a). When considering a summary judgment motion in a discriminatory discharge brought under the ADA, the court applies the burden shifting test found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The test is composed of three parts—(1) plaintiff must demonstrate a *prima facie* of discrimination; (2) if the *prima facie* case is established, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions and, (3) if the defendant does so, the presumption created by plaintiff's *prima facie* case is removed, and the plaintiff then must prove the presence of intentional discrimination by showing by a preponderance of the evidence that the defendant's proffered reasons are only a pretext for the real motivation of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993). In order to create a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must initially show that his employer is subject to the ADA, (2) he suffers from a disability within the meaning of the ADA, (3) he could perform the essential functions of his job with or without accommodation, and (4) he was discharged because of his disability. *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 149–150 (2d

Cir.1998). An employer is subject to the ADA if it is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. §§ 121119(a) and (5)(A). The defendant Group, a private corporation, meets the jurisdictional floor in plaintiff's ADA action.

A disability within the meaning of the ADA is defined as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A). There is little doubt that a metastatic islet cell tumor can constitute an impairment. Among its most prominent symptoms are restrictive food intake and, regurgitation thereof, weight loss, liver failure, extensive fatigue, intermittent low blood sugar, hand tremors, gait irregularity, and visual agitations making reading arduous. While the record contains no specific medical substantiated diagnosis of plaintiff's asserted disease, the court will assume that it is evidenced by his request for reduced working hours and/or seeking an administrative position. The question, then, is whether the impairment constitutes a disability under one of the statutory definitions listed above.

To ascertain if a plaintiff is disabled for the purposes of ADA, three steps are taken, (1) decide if the plaintiff is afflicted with a physical or mental impairment, (2) name the life activity upon which plaintiff relies and confirm whether it is a major life activity under the ADA and, (3) determine if plaintiff's impairment substantially limits the major life activity relied on by plaintiff. *Bragdon v. Abbott*, 524 U.S. 624, 632–39, 118 S.Ct. 2196, 2202–05, 141 L.Ed.2d 540 (1998). Major life activities are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. 1630.2(i). Plaintiff is physically impaired, and the impairment substantially limits his major life activity of working

■ The reduced hours accommodation claim:

This claim was not presented in plaintiff's EEOC complaint and, therefore, cannot be considered by the court unless the continuing violation exception is applicable. *West v. Philadelphia Electric Company*, 45 F.3d 744 (3rd Cir.1995); *LaBeach v. Nestle Co.*, 658 F.Supp. 676, 687 (S.D.N.Y. 1987). Under the continuing violation doctrine, if a plaintiff files a discrimination charge with the EEOC that is timely as to the incident of discrimination in furtherance of an ongoing policy of discrimination, all claims and act of discrimination under that policy will be timely even if they would be untimely standing alone. *Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir.1993). *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Although it is a close call in this case, it appears that plaintiff's reduced hours charge would come within the confines of the EEOC's probe and could reasonably be included in the denial of an administrative position discrimination charge.

The ADA obligates an employer to provide a reasonable accommodation for the limitations arising from an employee's disability. *Foreman v. Babcock & Wilcox Company*, 117 F.3d 800, 809 (5th Cir.1997). Plaintiff maintains that the Group discriminated against him by refusing to reasonably accommodate him and not permitting him to work without being required to take night call nor provide weekend coverage. These two responsibilities are major functions of his position, and during the nine month accommodation period the Group

afforded plaintiff at the North Medical Center, his duties were carried out by other members of the Group, in addition to their own required coverage, without remuneration.

"Reasonable accommodation" does not mean elimination of any of the job's essential functions. *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir.1991). Night call and weekend coverage are essential functions of plaintiff's employment. The record does not show otherwise. Nothing in the ADA indicates that in enacting this legislation, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply to show that disabled persons have the same opportunities available to them as are available to non-disabled person. The defendant Group did not have an affirmative duty to provide plaintiff with a position for which he was qualified; the Group only had an obligation to treat him in the same manner that it treated other similarly qualified personnel. *School Board v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987); *Bates v. Long Island Railroad Company,* 997 F.2d 1028, 1035–36 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). Furthermore, granting plaintiff's request for exemption from night call and weekend coverage would require the Group to relocate job duties to other employees in order to change essential functions of the position. *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995); 29 C.F.R. § 1630.2(*o*). An accommodation that would result in other employees having to work harder or longer is not required under the ADA. *Id.* at 1125, 1129 C.F.R. § 1630.2(p)(2)(v). This, in turn, would impact on the ability of other employees to perform their duties and on the ability of the Group to properly serve its patients. *Id.* Such accommodation would place an undue hardship burden on the Group and is not mandated by the ADA.

■ The administrative position claim:

When a Group member proposed that plaintiff be given the position of billing office manager at the Group's Board of Director's meeting, no such position was extant. In June 1999, Monte Priebe had vacated his position as Executive Practice Administrator for the Group. He was a full time employee receiving an annual salary of $125,000, and his job included many more aspects of health care financing than simply running the billing office.

In July 1999, the Group decided it did not need a full time Executive Practice Administrator, because the billing office was running well and they were dissatisfied with Mr. Priebe's work. Instead, the Group decided to retain Dermody, Burke & Brown, CPA, PC, to provide occasional consulting work for the Group on an as-needed basis on such issues as their party reimbursement, claims processing, systems operations and personnel in the billing office. No written contract was entered between the parties. The Dermody firm was to be paid between $150 and $185 per hour, with a $5,000 per month cap. William J. Kilroy, CPA, a health care financial specialist, provided consultation services to the Group from July 1999 until August 2001, when the parties mutually agreed to terminate the arrangement. The position of Executive Administrator was never filled by the Group, and it did not create a position of business manager or business consultant.

The supposed office of billing officer manager was never filled, and the ADA does not require an employer to create a new position to accommodate a disabled employee. *Jackson v. Analysts International Corp.,* 956 F.Supp. 1568 (D.Kan. 1997), *aff'd.* 134 F.3d 382 (10th Cir.1998),

and the statute does not obligate an employer to provide a disabled employee with every accommodation on his wish list. *Stewart v. County of Brown*, 86 F.3d 107, 111–12 (7th Cir.1996).

The defendant Group has provided legitimate explanations for the events that took place. Faced with these explanations, plaintiff must produce evidence to support a finding that they are a pretext. Plaintiff has not done so and, thus, has not established a *prima facie* case of disability discrimination.

The court declines to exercise pendant jurisdiction over plaintiff's state law claims under the New York Human Rights Law and the New York state common law claim of prima facie tort. When the federal law claims have been dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline to exercise pendant jurisdiction by dismissing the case without prejudice. This judgment will not foreclose plaintiff's pursuit of his state law claims in state court. *Buckley v. Consolidated Edison Company of New York*, 155 F.3d 150, 157 (2d Cir.1998).

Accordingly, defendant's motion for summary judgment is GRANTED with prejudice as to plaintiff's claims under the ADA, plaintiff's state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**