Stewart J. **RODAL**, Plaintiff–Appellant,

v.

**ANESTHESIA GROUP OF ONONDA-GA, P.C., Defendant–Appellee.**

**Docket No. 03–7341.**

United States Court of Appeals, Second Circuit.

Argued: March 17, 2004.

Decided: May 24, 2004.

Stewart L. Weisman, Manlius, New York, for Plaintiff–Appellant.

Shari R. Cohen, Scolaro, Shulman, Cohen, Fetter & Burstein, P.C., Syracuse, New York, for Defendant–Appellee.

Before: SACK, SOTOMAYOR, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge:

Plaintiff–Appellant Stewart J. Rodal, M.D., appeals from an award of summary judgment entered in the United States District Court for the Northern District of New York (Howard G. Munson, *Judge* ), in favor of the Defendant–Appellee, Anesthesia Group of Onondaga, P.C. (the "Anesthesia Group" or the "Group"), on Dr. Rodal's claims of employment discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), and New York's Human Rights Law, N.Y. Exec. Law § 296 (McKinney 2001). *See Rodal v. Anesthesia Group of Onondaga, P.C.,* 250 F.Supp.2d 78 (N.D.N.Y.2003). The district court ruled that, as a matter of law, Dr. Rodal could not demonstrate his ability to perform the duties of a Group anesthesiologist because the accommodation he required, relief from the essential job functions of night and weekend duty, was not reasonable. *See id.* at 82–83. The district court further concluded that even if the requested accommodation were reasonable, the Group was excused from granting it because of the undue hardship it would work on the Group's other physicians. *See id.* at 83. While the district court opinion raises legitimate concerns about the merits of Dr. Rodal's claims, we

conclude that these concerns cannot be resolved as a matter of law on the record presented. The record reveals genuine issues of material fact as to whether Dr. Rodal ever sought a scheduling accommodation from the Group in 1999; if he did, whether the accommodation was reasonable in light of receptive statements by the Group's president; and, if the accommodation was reasonable, whether its implementation would work a demonstrable undue hardship on the Group. Accordingly, we reverse the award of summary judgment and remand the case for further proceedings consistent with this opinion. In doing so, we note that the Supreme Court's ruling in *Clackamas Gastroenterology Associates, P.C. v. Wells,* 538 U.S. 440, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003), entered since the district court's judgment, raises a further question as to whether Dr. Rodal qualifies as an employee of the Group entitled to pursue ADA relief, resolution of which will require further development of the record on remand.

## I. *Factual Background*

### A. *The Undisputed 1995 Accommodation*

Dr. Stewart J. Rodal is a board-certified anesthesiologist who, in 1986, became a shareholder in the Anesthesia Group, a medical practice providing anesthesiology and related services to two hospitals in the vicinity of Syracuse, New York. Beginning in 1994, Dr. Rodal experienced various health problems attributable to a metastatic islet cell tumor, a rare form of cancer. In 1995, Dr. Rodal advised Dr. Anthony Ascioti, the director and president of the Anesthesia Group, that he wished to continue working but that his illness precluded him from performing night and weekend shift duty. Dr. Ascioti agreed to excuse Dr. Rodal from these responsibilities, and for the next six to seven months,

Dr. Rodal worked on a modified schedule receiving full compensation.

At the same time, Dr. Rodal and the Group discussed the possibility of a compensation reduction if his modified schedule were to become permanent. When the parties failed to reach an understanding on this point, Dr. Rodal returned to full-time duty in January 1996. On occasions when his health did not permit him to cover night and weekend shifts, Dr. Rodal paid other physicians to handle these duties.

B. *The Disputed 1999 Accommodation*

By 1999, it was clear to Dr. Rodal that he could no longer work a full schedule. On May 27, 1999, he spoke with Dr. Ascioti and requested a return to a no-nights no-weekends schedule. Receiving no response, Dr. Rodal announced his intention to take disability leave from the Anesthesia Group, which he did on July 17, 1999.

C. *Dr. Rodal's Discrimination Claim*

On May 5, 2000, Dr. Rodal filed a disability discrimination charge against the Anesthesia Group with the Buffalo office of the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed Dr. Rodal's complaint on June 28, 2000, on the alternative grounds that (1) jurisdiction was lacking because Dr. Rodal was a shareholder and director of the Anesthesia Group rather than an employee, and (2) the evidence failed to indicate a violation of law.

On September 13, 2000, Dr. Rodal filed the present action demanding compensatory and punitive damages from the Anesthesia Group under federal and state law for disability discrimination both in failing to accommodate his disability and failing to hire him as the Group's billing manager. On this appeal, Dr. Rodal pursues only the accommodation claims; accordingly, we make no further mention of the failure to hire claims.[1]

The Group acknowledged that under this court's ruling in *Hyland v. New Haven Radiology Associates, P.C.*, 794 F.2d 793 (2d Cir.1986), Dr. Rodal was one of its employees for purposes of the ADA. Nevertheless, it moved for summary judgment on the ground that Dr. Rodal could not establish that he was qualified to perform the essential functions of his job because (1) he had stated otherwise in an affidavit filed in a state lawsuit against the Group and was, therefore, judicially estopped from taking a contrary position in this action; and (2) his health condition presented a threat to proper patient care.[2] The Group further argued that Dr. Rodal could not establish that he had sustained an adverse employment action based on disability discrimination because he had not, in fact, sought any accommodation from the Group in the period between 1996–99.

On May 18, 2003, the district court granted the Group's motion for summary judgment, ruling as a matter of law that (1) Dr. Rodal's request to be excused from night and weekend duty was not a reasonable accommodation because such duties were essential functions of his position, and (2) granting the accommodation would be unduly harmful to other physicians in

---

1. New York State disability discrimination claims are governed by the same legal standards as federal ADA claims. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n. 1 (2d Cir.2000). Thus, although our discussion will focus on Dr. Rodal's ADA accommodation claim, our decision pertains equally to his parallel state claim.

2. On appeal, the Group asserts that it was not urging summary judgment on this ground. Accordingly, we assume that the argument is now abandoned.

the Group, who would have to assume greater responsibility for night and weekend duty. *See Rodal v. Anesthesia Group of Onondaga, P.C.*, 250 F.Supp.2d at 82–83.

## II. *Discussion*

"Summary judgment is appropriate where 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law,' i.e., 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (quoting Fed. R.Civ.P. 56(c) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). We conduct *de novo* review of the district court's award of summary judgment, construing the evidence in the light most favorable to the non-moving party. *Id.*

### A. *Dr. Rodal's ADA Claim*

■ A plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a *prima facie* case. Where, as in this case, a disabled plaintiff claims that he can perform a particular job with a reasonable accommodation, the *prima facie* burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the

essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *Id.* at 217.[3] On this appeal, the parties focus on the third and fourth requirements and present the following questions for our review: (1) should Dr. Rodal be judicially estopped from claiming that he was qualified to perform his job; (2) in 1999, did Dr. Rodal request an accommodation of his disability, which the Group thereafter denied; (3) if Dr. Rodal did seek such an accommodation, was the request unreasonable in asking the Group to relieve Dr. Rodal of night and weekend duty; and (4) would granting the accommodation have caused undue hardship to the Group.[4]

1. *Whether Dr. Rodal Should Be Judicially Estopped from Claiming that He Was Qualified to Perform His Job with the Group*

■ The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. *See Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999). Thus, "[a] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Id.* (citation omitted).

---

**3.** If plaintiff establishes a *prima facie* case, the burden of production shifts to defendant, who must articulate a legitimate nondiscriminatory reason for its challenged actions. If defendant carries this burden, the presumption of discrimination created by the plaintiff's *prima facie* showing drops out of the case, and plaintiff must then prove that defendant's actions were motivated by impermissible discrimination. *See Regional Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir.2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

**4.** Because the district court awarded summary judgment to the Group on the latter two grounds without specifically addressing the former two, we assume it resolved these arguments in favor of Dr. Rodal.

■ In this case, the Group submits that Dr. Rodal should be estopped from asserting, as he does in his affidavit in opposition to summary judgment, that he "was fully capable of performing the essential functions of the position as an anesthesiologist [with the Group] had [he] been accorded the accommodation of a reduction in hours," Rodal Aff. ¶ 33, in light of a contrary statement in an affidavit he filed in state court in support of a successful summary judgment motion in a case concerning the Group's financial obligations to Dr. Rodal as a consequence of his taking disability leave. In that affidavit, Dr. Rodal stated, in relevant part:

9. On May 27, 1999, I discussed with [Dr. Ascioti] that I felt my condition had become such that I could not continue to work any longer and that it would be necessary for me to go out on disability....

10.... [O]n July 17, 1999, *I became disabled and unable to perform substantially all of my duties due to illness.* This condition continued in excess of one year ....

11. I respectfully submit that there is no factual dispute and there can be no factual dispute as to the extent or duration of my disability....

Aff. of Stewart J. Rodal at 3, *Rodal v. Anesthesia Group of Onondaga, P.C.,* No.2000–6717 (N.Y. Sup. Ct, Onondaga Cty.2000) (emphasis added).

■ The law in this circuit recognizes that when an individual's prior submission regarding his disability to an adjudicatory body contains a "purely factual statement[ ] that directly contradict[s]" a statement made in a subsequent ADA claim, and the two "[can]not be reconciled with any amount of explanation," judicial estoppel will preclude the ADA claim. *Parker v. Columbia Pictures Indus.,* 204 F.3d at 334 (citing as examples of factually contradictory statements plaintiffs' assertions that they could/could not raise their arms above their head, or could/could not stand and walk). As the Supreme Court cautioned in *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), however, a court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction. In *Cleveland,* the Court ruled that a representation of complete disability in a Social Security proceeding was not directly contradicted by the same person's ADA claim that he could perform essential job functions with reasonable accommodation because the former proceeding did not consider the effect that reasonable workplace accommodations would have on the claimant's ability to work. *See id.* at 807, 119 S.Ct. 1597.

Dr. Rodal analogizes his case to *Cleveland* and notes that his ability to perform his job duties at the Group with a reasonable accommodation was not an issue in the parties' state court dispute. We agree that if the evidence is viewed in the light most favorable to Dr. Rodal, the statements can be construed without conflict to reflect the evolution of events between May and July 1999. In this action, Dr. Rodal states that if his May 1999 request for a scheduling accommodation had been granted, he could have continued to work as a Group anesthesiologist, performing the essential duties of that job. But, as he stated in the New York action, with no such accommodation having been granted by July 1999, he could no longer carry out the duties of that position and, thus, found it necessary to take disability leave.

Because the statements at issue do not present an irreconcilable direct conflict, we hold that the Group is not entitled to summary judgment on a theory of judicial

estoppel. Instead, Dr. Rodal's statements, together with all other relevant evidence, will have to be weighed by the factfinder to determine whether the doctor has established a claim of disability discrimination.

### 2. Whether Dr. Rodal Actually Requested and the Group Denied a Reasonable Accommodation in 1999

■ "In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 app. § 1630.9. The record reveals a major factual dispute between the parties as to whether in 1999 Dr. Rodal sought, and whether the Group refused to grant him, a reasonable accommodation for his disability.

In support of its motion for summary judgment, the Group pointed to Dr. Ascioti's deposition statement that "[f]rom the time [Dr. Rodal] returned to the Hospital in January, 1996, until he went out on disability in July, 1999, [Dr.] Rodal never requested an accommodation permitting him to work days only, without any night or weekend call." Ascioti Aff. ¶ 29. By contrast, Dr. Rodal averred that at a May 27, 1999 meeting with Dr. Ascioti, he orally requested a scheduling accommodation. See Rodal Aff. ¶¶ 25–29. Such a factual dispute cannot be resolved as a matter of law. Thus, in reviewing the district court's award of summary judgment in favor of the Group, we must assume that Dr. Rodal's version of the story is the correct one.

### 3. The Reasonableness of Dr. Rodal's Requested Accommodation

■ If we assume that Dr. Rodal did request a scheduling accommodation on May 27, 1999, and that the Group failed to grant it, summary judgment in favor of the Group would nevertheless be appropriate if the accommodation was unreasonable as a matter of law. The district court so concluded based on a finding that the accommodation required the Group to eliminate an essential function of Dr. Rodal's job, specifically, night and weekend duty.

■ A disabled individual is qualified for a particular position if he can perform the essential functions of the job with or without reasonable accommodation. See Shannon v. New York City Transit Auth., 332 F.3d 95, 99–100 (2d Cir.2003). A modified work schedule may constitute a reasonable accommodation in certain circumstances. See 42 U.S.C. § 12111(9)(B) (including "part-time or modified work schedules" within the list of methods encompassed by the term "reasonable accommodation"). But a scheduling accommodation is not reasonable if it, in essence, requires an employer to eliminate an essential function of a job. See Shannon v. New York City Transit Auth., 332 F.3d at 100 ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

■ EEOC regulations define "essential functions" to mean the " 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.' " Id. (quoting Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996))). " '[A] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.' " Id. (quoting D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir.1998)). But ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances. See Stone v. City of Mount Vernon, 118 F.3d at 97 (factors relevant to determining whether a job function is essential include the employer's judgment, written job descriptions, the

amount of time spent on the job performing the function, the consequences of not requiring the plaintiff to perform the function, mention of the function in any collective bargaining agreement, the work experience of past employees in the job, and the work experience of current employees in similar jobs (citing 29 C.F.R. § 1630.2(n))).

Mindful of this precedent, we conclude that the record in this case, when viewed in the light most favorable to Dr. Rodal, did not permit the district court to rule as a matter of law that night and weekend duty constituted an essential function of his job as a Group anesthesiologist. Although it appears undisputed that Dr. Rodal had always performed night and weekend duty before his illness and that all other shareholder-physicians in the Group were expected to do so, the Group had, nevertheless, accommodated Dr. Rodal's request to be relieved of this duty for several months in 1995 and, apparently, would have been prepared to do so permanently had the parties reached agreement on a compensation modification. Further, Dr. Ascioti's deposition testimony concedes that the Group would have been willing to grant Dr. Rodal another scheduling accommodation in 1999 had one been requested. Dr. Ascioti explained that "[t]hroughout 1999, the Group was short-staffed and actively recruiting physician-employees to work days only." Ascioti Aff. ¶ 30. Although these physician-employees were not shareholders or directors of the Group, as was Dr. Rodal, Dr. Ascioti stated that because the Group was "understaffed and seeking days-only physicians, we certainly would have addressed [Dr. Rodal's] request for an accommodation, had such a request been made." Id. ¶ 33. In short, the Group's own evidence indicates that it did not consider the requested scheduling accommodation unreasonable; its singular concern with such an accommodation was

making an adjustment to Dr. Rodal's compensation to reflect the transfer of his night and weekend duties to other physicians. The propriety of such an adjustment is not here at issue.

We note simply that the Group, in moving for summary judgment, never challenged the reasonableness of the requested accommodation on the ground that it sought to eliminate an essential function of Dr. Rodal's job. Rather, relying on Dr. Ascioti's statements, the Group argued that Dr. Rodal had not requested such an accommodation. Although the Group now tries to defend the district court's essential-function conclusion, we hold that Dr. Ascioti's statements raise questions of fact on the reasonableness of the requested accommodation that preclude an award of summary judgment.

### 4. Whether the Requested Accommodation Would Cause "Undue Hardship" for the Anesthesia Group

 Even if Dr. Rodal's requested accommodation was reasonable, the Group would still be entitled to summary judgment if the implementation of the accommodation would work an "undue hardship." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d at 221. The district court concluded that requiring other Anesthesia Group physicians to cover Dr. Rodal's night and weekend shifts in addition to their own would result in such a hardship. *Rodal v. Anesthesia Group of Onondaga, P.C.*, 250 F.Supp.2d at 83. Once again, we conclude that the record, when viewed in the light most favorable to Dr. Rodal, does not permit such a conclusion to be reached as a matter of law.

 "Undue hardship" is an employer's affirmative defense, proof of which requires a detailed showing that the proposed accommodation would "requir[e] sig-

nificant difficulty or expense" in light of specific enumerated statutory factors. *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d at 221; *see* 42 U.S.C. § 12111(10)(A)-(B) (identifying relevant factors to include (1) the employer's type of operation, including its composition, structure, and the functions of its workforce; (2) the employer's overall financial resources; (3) the financial resources involved in the provision of the reasonable accommodation; and (4) the impact of such accommodation upon the employer's operation).

The Anesthesia Group never asserted this affirmative defense before the district court and never adduced evidence to show that accommodating Dr. Rodal would result in an undue hardship. Specifically, it provided no schedules indicating how it covered night and weekend duty. Nor did it provide any concrete evidence indicating the likely impact of Dr. Rodal's accommodation on these schedules. Certainly, it provided no evidence of the Group's financial resources, the costs associated with the accommodation, or the impact of those costs on the Group depending on whether a compensation modification was or was not agreed to by Dr. Rodal. We recognize, as the district court did, that if Dr. Rodal were relieved from night and weekend duty, the burden of these not-insignificant responsibilities would fall on other doctors, but without concrete information, we cannot conclude as a matter of law that the burden was so disproportionately heavy as to absolve the Group from its reasonable accommodation obligations under the ADA. Accordingly, the award of summary judgment must be reversed.

B. *Dr. Rodal's Status as an "Employee" Under the ADA*

Dr. Rodal's ADA claim is based on 42 U.S.C. § 12112(a), which states in perti-

nent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the discharge of employees, employee compensation, ... and other terms, conditions, and privileges of employment." The statute defines an "employee" simply as "an individual employed by an employer," *id.* § 12111(4), a " 'circular' " construction that, as the Supreme Court has observed, " 'explains nothing.' " *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. at 444, 123 S.Ct. 1673 (quoting *Nationwide Mut., Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)) (construing similar definition of employee in ERISA).

For some time, the definition presented particular challenges as applied to professional corporations, "a [relatively] new type of business entity that has no exact precedent in the common law." *Id.* at 447, 123 S.Ct. 1673. Prior to the enactment of state statutes authorizing such corporations, professionals often associated as partners, to whom it was "generally accepted that the benefits of ... antidiscrimination statutes ... do not extend." *Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d at 797. In professional corporations, however, the participating professionals are "shareholders," which led some courts, including this one, to conclude that "[h]aving made the election to incorporate" and reap the tax and employee benefits associated with this business form, they could not at the same time claim that their business was "essentially a ... partnership" for purposes of evading antidiscrimination laws. *Id.* at 798. Other courts, however, concluded that "[t]he role of a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation," and ruled that such shareholders could not be considered "em-

ployees" protected from workplace discrimination. *EEOC v. Dowd & Dowd, Ltd.*, 736 F.2d 1177, 1178 (7th Cir.1984).

Last term, the Supreme Court intervened to resolve the circuit conflict on this issue. In *Clackamas Gastroenterology Associates, P.C. v. Wells,* the Court eschewed categorical approaches and instead looked to the common-law master-servant relationship for guidance, stating that "the common-law element of control is the principal guidepost that should be followed" in evaluating whether a shareholder of a professional corporation is an "employee" for purposes of the antidiscrimination statutes. 538 U.S. at 448, 123 S.Ct. 1673. The Court ruled that the relevant inquiry is "whether the individual acts independently and participates in managing the organization, or whether the individual is subject to the organization's control." *Id.* at 449, 123 S.Ct. 1673. It approved six factors, identified by the EEOC, as relevant to this determination:

> "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> Whether and, if so, to what extent the organization supervises the individual's work
>
> Whether the individual reports to someone higher in the organization
>
> Whether and, if so, to what extent the individual is able to influence the organization
>
> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> Whether the individual shares in the profits, losses, and liabilities of the organization."

*Id.* at 449–50, 123 S.Ct. 1673 (quoting EEOC Compliance Manual § 605:0009).

▆▆▆ At the time the district court decided this case, it was, of course, bound by our holding in *Hyland v. New Haven Ra-*

*diology Associates, P.C.* and its progeny that shareholders in a professional corporation were always employees for antidiscrimination purposes. In light of *Clackamas,* however, it is necessary to reexamine this issue under the proper standard. Because the point was not raised or briefed in the district court, no record was developed that could permit us to decide it now. Thus, on remand, the district court may reopen discovery or take whatever steps it deems appropriate to determine whether Dr. Rodal was an employee of the Anesthesia Group entitled to the protections of the ADA in light of *Clackamas.*

### III. *Conclusion*

To summarize, we conclude that Dr. Rodal is not judicially estopped from claiming that he was qualified to perform the duties of a Group anesthesiologist with reasonable accommodation by statements he made in earlier state court proceedings about the extent of his disability. We further conclude that the evidence, when viewed in the light most favorable to Dr. Rodal, does not permit a court to conclude as a matter of law that (1) Dr. Rodal failed to seek any accommodation for his disability from the Group in 1999; or (2) if he did seek an accommodation, it was unreasonable because it would have required relieving him from essential job functions; or (3) even if his requested accommodation was reasonable, it nevertheless imposed an undue burden on the Anesthesia Group.

Accordingly, we REVERSE the May 18, 2003 judgment in favor of the Anesthesia Group and REMAND the case to the district court for further proceedings consistent with this opinion, including further consideration of Dr. Rodal's status as a Group employee.